**POTTER'S SHOPPING CENTER, INC.**

v.

**Joseph SZEKELY, et al.**

Court of Appeals of Tennessee,
at Nashville.

Sept. 17, 2014 Session.

Oct. 8, 2014.

Melanie Stepp Lane, Jamestown, Tennessee, for the appellants, Joseph Szekely and Shazzmarie K. Szekely.

R. Jack Atkins, Crossville, Tennessee, for the appellee, Potter's Shopping Center, Inc.

## OPINION

BRANDON O. GIBSON, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. McCLARTY, J., joined.

Appellants appeal from the trial court's decision to grant partial summary judgment to the Appellee. After reviewing the record, we find that the trial court failed to state the legal grounds on which it was granting summary judgment as required by Tennessee Rule of Civil Procedure 56.04. Consequently, this Court cannot proceed with our review and must vacate the order at issue.

### I. BACKGROUND AND PROCEDURAL HISTORY

In 2007, Joseph and Shazzmarie Szekely entered a written contract with Dereck Delk d/b/a Delk Construction ("Delk") for the construction of a house on their property. Rather than setting a fixed price for the house, the contract provided that the Szekelys would reimburse Delk for the cost of constructing the house plus ten percent, otherwise known as a "cost plus" contract. The Szekelys obtained a construction loan that provided for periodic withdrawals by Delk proportionate to the percentage of work completed on the house. Delk began building the house in late 2007. During the construction, Delk acquired various building materials for the house from Potter's Shopping Center, Inc. ("Potter's"). Delk set up an open account with Potter's, and Potter's sent Delk

monthly billing statements reflecting the balance it owed for the materials.

By July 2008, construction on the house was over budget, and Delk was experiencing severe financial difficulties. As progress on the house lagged, the bank refused Delk's requests to withdraw loan funds, and the Szekelys paid Delk money out of pocket to keep the construction going. In September 2008, Delk stopped working on the house.[1] The Szekelys filed a lawsuit against Delk for breach of contract. In response, Delk filed a counterclaim alleging that the Szekelys owed him $79,516.34 for work on the house.[2] Though it is not immediately clear from the record how the lawsuit was resolved, it is undisputed that the Szekelys never paid additional money to Delk.[3]

Meanwhile, Delk still owed Potter's money for some of the materials Potter's provided during the construction. According to Potter's, after construction on the Szekelys' house stopped, Delk still had an outstanding balance of $33,647.56. Unfortunately for Potter's, Delk was discharged of the debt after filing for bankruptcy on September 1, 2010.

On September 28, 2010, Potter's filed a complaint against the Szekelys in Fentress County Chancery Court. The complaint alleged that the Szekelys had been unjustly enriched by the materials Potter's supplied to Delk and sought $33,647.56 in damages. The Szekelys answered, denying any liability to Potter's.

After a period of discovery, Potter's filed a motion for summary judgment on May 21, 2012. In support of its motion, Potter's filed a memorandum of law and a statement of undisputed material facts, along with supporting affidavits. Relying on an affidavit from Delk, Potter's asserted that the Szekelys never paid Delk $79,516.34 they owed him for the house. Potter's contended that because the Szekelys failed to pay Delk the full amount they owed him, Delk was unable to pay Potter's. Accordingly, Potter's argued that it was entitled to judgment because it would be unjust to allow the Szekelys to benefit from the materials Potter's provided without paying for them. The trial court scheduled a hearing on the motion for September 17, 2012.

On August 31, 2012, the Szekelys filed a brief opposing Potter's summary judgment motion. Additionally, the Szekelys filed a memorandum of law and their own statement of undisputed facts, along with supporting affidavits. The Szekelys asserted that undisputed facts showed that Delk had money in its accounts to pay Potter's in 2008, but that Potter's made little effort to collect from Delk. The Szekelys argued that Potter's was not entitled to damages for unjust enrichment because it did not exhaust its remedies against Delk. On September 10, 2012, the Szekelys separately filed a response to Potter's statement of undisputed facts. Relying on the affidavit of Joseph Szekely, the Szekelys disputed that they owed Delk any money for the house because the amount Delk charged was excessive and not justified by the labor and materials he supplied.

Potter's responded on September 11, 2012, arguing that, as the nonmoving party on summary judgment, the Szekelys violated Tennessee Rule of Civil Procedure

---

1. It is not clear from the record how much of the house Delk completed before stopping.

2. Delk alleged that the cost of construction on the house plus ten percent was $300,584.20. The Szekelys paid Delk $221,067.86.

3. At oral argument, counsel for the Szekelys stated that both the Szekelys and Delk dismissed their claims against each other in the summer of 2009.

56.03 by filing their own statement of undisputed material facts. Potter's objected to the statement in its entirety and asked the court to disregard it. Its objection notwithstanding, Potter's answered the Szekelys statement of undisputed facts, admitting most of the facts asserted for purposes of summary judgment, but contending that they were not material.

The trial court held its hearing on the pending motion for summary judgment on September 17, 2012. After oral arguments from both sides, the trial court granted partial summary judgment to Potter's on the issue of liability but reserved the issue of damages for a later hearing. The issue of damages was argued before a jury on February 3, 2014, which awarded Potter's a verdict in the amount of $32,000. On February 27, 2014, the court entered a final judgment against the Szekelys in that amount.

The Szekelys timely appealed the trial court's order. They raise the following issues for our review:

1. Whether the trial court erred in finding that undisputed facts establish that the Szekelys have not paid Delk for the materials at issue.

2. Whether the trial court erred in finding that undisputed facts establish that Potter's exhausted its remedies against Delk or that pursuit of such remedies would have been futile.

## II. DISCUSSION

In 2007, Tennessee Rule of Civil Procedure 56.04 was amended to require trial courts to "state the legal grounds upon which the court denies or grants the [summary judgment] motion," and to include such statement in the order reflecting the court's ruling.[4] In part, the change to Rule 56.04 was intended to enable reviewing courts to easily ascertain the legal basis for the trial court's decision. *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 313–14 (Tenn.2014). Indeed, this Court has stated that "[w]hen the legal grounds for the trial court's decision are omitted, a reviewing court cannot analyze the decision's validity, and appellate review becomes unnecessarily speculative." *Winn v. Welch Farm, LLC*, No. M2009–01595–COA–R3–CV, 2010 WL 2265451, at *5 (Tenn.Ct.App. June 4, 2010).

The requirements of the current version of Rule 56.04 are "specific and without exception." *Id.* (citing Tenn. R. Civ. P. 56.04). Since its adoption, this Court has, on occasion, vacated summary judgment orders that failed to comply with Rule 56.04 and remanded them to the trial court for further consideration. *See, e.g., Ragland v. Morrison*, No. W2013–00540–COA–R3–CV, 2013 WL 4805624, at *4–5 (Tenn.Ct.App. Sept. 10, 2013); *State v. Centurion Industria e Comercio de Cigarros, LTDA*, No. M2010–02602–COA–R3–CV, 2011 WL 2923725, at *7 (Tenn.Ct.App. July 20, 2011); *Winn*, 2010 WL 2265451, at *6; *Eluhu v. HCA Health Servs. of Tenn. Inc.*, No. M2008–01152–COA–R3–CV, 2009 WL 3460370, at *21 (Tenn.Ct.App. Oct. 27, 2009). In other cases, however, this Court has chosen to "soldier on without guidance from the trial court," *Church v. Perales*, 39 S.W.3d 149, 158 (Tenn.Ct.App.2000), where the basis for the trial court's decision can be readily gleaned from the record. *See, e.g., Burse v. Hicks*, No. W2007–02848–COA–R3–CV, 2008 WL 4414718, at *2 (Tenn.Ct.App. Sept. 30, 2008) (proceeding

4. "Previously Rule 56.04 required a trial judge 'upon request' to state the legal grounds for granting summary judgment. The amendment extends that principle to a denial of summary judgment. The amendment also deletes the words 'upon request.' " Tenn. R. Civ. P. 56.04 Adv. Comm'n Cmt. to 2007 amend.

with review "for the sake of judicial economy" after determining that "[t]he record presents a clear legal issue"); *White v. Pulaski Elec. Sys.*, No. M2007–01835–COA–R3–CV, 2008 WL 3850525, at *3 (Tenn.Ct.App. Aug. 18, 2008) (proceeding with review after determining that the legal grounds for summary judgment were "readily found" in the record); *Burgess v. Kone, Inc.*, No. M2007–02529–COA–R3–CV, 2008 WL 2796409, at *2 (Tenn.Ct.App. July 18, 2008) (proceeding with review after determining that the legal grounds for the trial court's decision were "readily ascertained" because the record included a CD–Rom of the hearing, including the court's ruling from the bench).

While this case was pending on appeal, the Tennessee Supreme Court addressed the requirements of Rule 56.04 and the appellate courts' enforcement of the rule in *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 313–15 (Tenn.2014), a healthcare liability case. In *Smith*, the supreme court began its analysis of Rule 56.04 by emphasizing the crucial role the judicial system plays in society and remarking that "[p]roviding reasons for a decision reinforces the legitimacy of the legal process which, in turn, promotes respect for the judicial system." *Id.* at 313. Against that background, the Court explained that the amendments to Rule 56.04 making a statement of grounds mandatory were made not only to assist appellate courts in their review, but also because "explanations of the basis for judicial decisions promote respect for and acceptance of not only the particular decision but also for the legal system." *Id.* Emphasizing the latter of those two objectives, the Court suggested that appellate courts should take care not to be too lenient in their enforcement of Rule 56.04's requirements:

Despite the amendments to Tenn. R. Civ. P. 56.04 making the statement of grounds mandatory, the Court of Appeals has been reticent to vacate summary judgment orders that plainly do not comply with Tenn. R. Civ. P. 56.04 and to remand them to the trial court for further consideration. The court continues to conduct archeological digs and to review summary judgment orders when the basis for the trial court's decision can be readily gleaned from the record and to remand the case only when their practiced eyes cannot discern the grounds for the trial court's decision.

We readily agree that judicial economy supports the Court of Appeals' approach to the enforcement of Tenn. R. Civ. P. 56.04 in proper circumstances when the absence of stated grounds in the trial court's order does not significantly hamper the review of the trial court's decision. However, in the future, the resolution of issues relating to a trial court's compliance or lack of compliance with Tenn. R. Civ. P. 56.04 should also take into consideration the fundamental importance of assuring that a trial court's decision either to grant or deny a summary judgment is adequately explained and is the product of the trial court's independent judgment.

*Smith*, 439 S.W.3d at 314 (footnotes omitted).

■ Keeping in mind the supreme court's guidance from *Smith*, we turn to Rule 56.04's application to the circumstances of this case. The order before this Court states in its entirety:

This matter came to be heard on the 17 day of September, 2012 before the Honorable Chancellor Billy Joe White in Jamestown upon Plaintiff's Motion For Summary Judgment and Defendant's response to same.

The Court reviewed Plaintiff's Motion For Summary Judgment, together with the documents attached thereto, and the

Defendant's Response to the Motion For Summary Judgment, together with the documents attached thereto. The Court heard argument of counsel in open court.

Thereupon, the Court finds there exists no undisputed material fact in this cause of action, and as a matter of law, Plaintiff is entitled to judgment against Defendants in quantum meruit.

Furthermore, the legal measure of Plaintiff's damages shall be the actual value to Defendants of the unpaid building materials which are the subject of this cause of action.

A hearing to determine the actual value of the unpaid building materials, which are the subject of this cause of action, will be held at a later date.

It is so ORDERED, ADJUDGED, AND DECREED this 2nd day of Oct., 2012.

The order does not state the legal grounds for the grant of summary judgment. The trial court did not recite any evidence or argument it considered in making the decision to grant summary judgment. This practice does not comply with Rule 56.04. We note that in past cases, this Court has chosen to proceed with its review after determining that the legal grounds for the trial court's decision were "readily found" in the record. *See, e.g., White v. Pulaski Elec. Sys.,* No. M2007–01835–COA–R3–CV, 2008 WL 3850525, at *3 (Tenn.Ct.App. Aug. 18, 2008). Additionally, we note the supreme court's statement in *Smith* that judicial economy supports proceeding with review "in proper circumstances when the absence of stated grounds in the trial court's order does not significantly hamper [appellate review]." *Smith,* 439 S.W.3d at 314. However, unlike past cases in which this Court has chosen to "soldier on," the record in this case does not contain a transcript of the hearing on the motion for summary judgment or any other indication of the legal grounds for the trial court's decision. The parties' summary judgment filings indicate the existence of several disputed facts. For instance, Potter's asserts that the Szekelys failed to pay $79,516.34 they owed Delk; the Szekelys claim that Delk overcharged them and that they do not owe him any money. Additionally, the Szekelys claim that Potter's could have collected the money directly from Delk in 2008 had it exhausted its remedies against him; Potter's claims that such efforts would have been futile. We cannot, based on the record before us, determine whether the trial court found these disputes immaterial to Potter's unjust enrichment claim.[5]

█ The judgment at issue involves questions of law that require analysis and explanation. "We cannot proceed with a review, speculating on the legal theories upon which the trial court may have ruled and the legal conclusions the trial court may have made." *Winn v. Welch Farm, LLC,* No. M2009–01595–COA–R3–CV, 2010 WL 2265451, at *6 (Tenn.Ct.App. June 4, 2010). Accordingly, we must vacate the order of the trial court granting partial summary judgment to Potter's and remand this case for further proceedings consistent with this opinion. In doing so, we note that after the trial court granted

---

5. To prevail on an unjust enrichment claim, the plaintiff must demonstrate that: (1) a benefit was conferred on the defendant by the plaintiff; (2) the defendant appreciated the benefits; and (3) the defendant accepted the benefit under such circumstances that it would be inequitable to retain the benefit without paying its value to the plaintiff. *Free-man Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 525 (Tenn.2005). Additionally, the plaintiff must demonstrate that he or she has exhausted all remedies against the party with whom he or she enjoyed privity of contract, unless the pursuit of such remedies would be futile. *Id.* at 525–26.

summary judgment to Potter's on the issue of liability, a jury found the value to the Szekelys of the benefit of the materials provided by Potter's, for which Potter's was not paid, to be $32,000. As the jury's determination has not been challenged, it remains undisturbed by this opinion. Costs of this appeal are taxed one-half to the appellee, Potter's Shopping Center, Inc., and one-half to the appellants, Joseph Szekely and Shazzmarie K. Szekely, and their surety, for which execution may issue if necessary.